James V. MARCUM, Commissioner, Department of Revenue, Commonwealth of Kentucky, Appellant,

v.

CITY OF LOUISVILLE MUNICIPAL HOUSING COMMISSION, Appellee.

Court of Appeals of Kentucky.

March 8, 1963.

Rehearings Denied Nov. 8, 1963 and Feb. 21, 1964.

William S. Riley, Asst. Atty. Gen., Francis D. Burke, William P. Curlin, Jr., Dept. of Revenue, Frankfort, for appellant.

Carl Wedekind, Jr., James W. Stites, N. H. Dosker, Louisville, for appellee.

WILLIAMS, Judge.

The appellee, City of Louisville Municipal Housing Commission, brought this action against the Commissioner of the Department of Revenue, Commonwealth of Kentucky, seeking a declaration of rights that it is exempt from the Kentucky sales and use tax on utilities purchased by it. From a judgment of the Franklin Circuit

Court declaring the appellee exempt, this appeal is taken.

It has been agreed for the purposes of this case that the appellee is an institution of purely public charity and within the purview of section 170 of the Kentucky Constitution. That section exempts from taxation "institutions of purely public charity." Also KRS 139.470 provides:

"There are excluded from the computation of the amount of taxes imposed by this chapter:

"(1) Gross receipts from the sale of, and the storage, use or other consumption in this state of, tangible personal property the gross receipts from the sale of which, or the storage, use or other consumption of which, this state is prohibited from taxing under the Constitution or laws of the United States, or under the Constitution of this state; * * *"

Obviously then, the judgment of the lower court is correct if the tax is imposed upon the appellee.

■ In order to avoid confusion we shall first dispose of the use tax question. The legislature, by Chapter 5, Acts 1960 General Assembly, enacted both a sales tax and a use tax. Provisions for the collection and incidence of the two differ. The use tax is an excise tax imposed on the storage, use or other consumption of personal property (KRS 139.310) and must be collected by the retailer from the consumer (KRS 139.340). Clearly, the legal incidence of the use tax falls upon the consumer who is the appellee here and, as the taxpayer, is exempt under section 170 of the Constitution and KRS 139.470. The appellant admits this fact.

■ On the other hand, the sales tax is imposed upon all retailers for the privilege of making retail sales (KRS 139.200) and may be collected by the retailer from the consumer (KRS 139.210). It was the obvious intent of the legislature to place the legal incidence and economic burden of the use tax on the consumer. It is just as apparent the legislature intended to place the legal incidence of the sales tax on the retailer, even though the economic burden might be passed on to the consumer.

The United States Supreme Court, in James v. Dravo Contracting Company, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318, construed the West Virginia gross sales tax statute which imposed upon a contracting company a tax equal to two per cent of the gross income from its business. The Company realized income from a contract with the federal government. It was held that the tax on such income was not a tax on the government although it was a direct burden on the government. The Supreme Court, in Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, held that the Alabama sales tax which was imposed upon the retailer but required to be passed on to the consumer was not a tax on the United States even though the economic burden was passed on to the United States. The Court said:

"* * * The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different view has prevailed, see Panhandle Oil Co. v. State ex rel. Knox, supra [277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857]; Graves v. Texas Co., supra [298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236], we think it no longer tenable. * * *"

Since King & Boozer, the test has been whether the legal incidence is upon the tax exempt instrumentality. If so, it need not bear the burden of payment. But, if it is affected only through increased costs of services or materials, the exemption does not lie. See 9 Vanderbilt Law Review, beginning at page 204.

The Supreme Court has considered several cases involving different factual situa-

tions but has not varied from an approval of the "legal incidence" test as opposed to the "economic burden" test. See United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Esso Standard Oil Co. v. Evans, 345 U.S. 495, 73 S.Ct. 800, 97 L.Ed. 1174; Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L. Ed. 546; United States v. City of Detroit, 355 U.S. 466, 495, 505, 78 S.Ct. 474, 2 L. Ed.2d 424; United States v. Township of Muskegon, 355 U.S. 484, 78 S.Ct. 483, 2 L. Ed.2d 436; City of Detroit v. Murray Corporation, 355 U.S. 489, 78 S.Ct. 458, 486, 2 L.Ed.2d 441, 460. State courts have followed the lead; e. g., Timm Aircraft Corp. v. Byram, 34 Cal.2d 632, 213 P.2d 715, 716; General Dynamics Corp. v. County of Los Angeles, 51 Cal.2d 59, 330 P.2d 794, 796. And this Court, on one occasion, rejected the contention that federal employees were exempt from a Louisville occupation tax on the theory such tax placed a burden on the federal government. Cook v. Commissioners of Sinking Fund of City of Louisville, 312 Ky. 1, 226 S.W.2d 328. Therein we said:

"* * * If it could be determined with any reasonable degree of certainty that any portion of the burden of the tax levied against its employee and measured by his income could reach the Federal Government, such would be a mere incident arising out of the co-existence of more than one taxing authority, and which was known and recognized at the time of the adoption of the Federal Constitution. * * *"

The latest expression of this Court relating to the economic impact of a tax was in Marcum v. Kentucky Enterprise Federal Savings & Loan Association, Ky., 363 S.W. 2d 118. The question there was whether a tax on the capital stock of a domestic building and loan association was a tax imposed on the corporation or upon its members. We said:

"* * * The provision of KRS 136.-300(2) entitling the corporation to re-imburse itself out of dividends, if it so elects, satisfies one of the tests of a tax against the ownership interests of the members but of course is not itself dispositive, nor is the fact that under various other statutory sections cited by the Department the ability of the corporation to cast the ultimate burden of the tax upon the members seems assured. Regardless of the relationship between the corporation and its members, we find nothing to indicate any liability for the tax on the part of the individual members, as would exist if the corporation were merely a collecting agent."

We now look to various sections of the sales tax law. KRS 139.200 imposes a tax on all retailers at the rate of three per cent of the gross receipts derived from retail sales for the privilege of making retail sales. KRS 139.210 provides the taxes imposed may be collected from the consumer. The taxpayer is the person liable for the tax. (KRS 139.180) All gross receipts are subject to the tax until the contrary is established. (KRS 139.260) The definition of retailer includes a seller who is a person engaged in the business of selling tangible personal property or services of a kind, the gross receipts from the retail sale of which are required to be included in the measure of the sales tax. (KRS 139.140) He must have a permit to do business (KRS 139.240) which is non-assignable. (KRS 139.250) All of which indicates the intent of the legislature that the sales tax is on the retailer and not the consumer.

By comparison we note that the Kentucky statute closely follows the California Code (California Rev. & Tax. C.A., section 6001 et seq.). Section 6051 provides:

"For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of 2½ percent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this State * * *."

The California Court, in Livingston Rock and Gravel Co. v. De Salvo, 136 Cal.App.2d 156, 288 P.2d 317, said that the sales tax is levied on the retailer for the privilege of selling tangible personal property. And in a landmark case from that state, Western Lithograph Co. v. State Board of Equalization, 11 Cal.2d 156, 78 P.2d 731, 117 A.L.R. 838, that court held the sales tax provisions create a relation of sovereign power and taxpayer between the state and retailer and not between the state and consumer.

KRS 139.210 provides:

"The taxes herein imposed may be collected by the retailer from the consumer."

California Rev. & Tax. C.A., section 6052, provides:

"The tax hereby imposed shall be collected by the retailer from the consumer insofar as it can be done."

Although the California directive is stronger than that provided in the Kentucky statute, nevertheless the California courts have consistently construed it as providing for a tax on the retailer and not the consumer. It was said in Market Street Railway Company v. California State Board of Equalization, 137 Cal.App.2d 87, 290 P.2d 20:

"* * * But the sales tax is not a tax on the buyer, but a tax on the seller, imposed on the privilege of selling goods at retail. While the seller may pass the tax on to the buyer, the tax itself is imposed on the seller, and the payment of it is his primary obligation. The buyer has no direct obligation, so far as the state is concerned, for the payment of the tax."

In Western Lithograph Co. v. State Board of Equalization, supra, it was stated:

"* * * The tax being a direct obligation of the retailer and, so far as the consumer is concerned, a part of the price paid for the goods and nothing else, it is neither in fact nor in effect laid upon the consumer. It does not become a tax on the sale nor because of the sale, but remains an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales."

We note from a comparison of the Sales Tax Acts of several different states that in almost every instance the incidence of the tax is said to be on the retailer when the law merely *permits* him to collect from the consumer. On the other hand, the incidence is held to be on the consumer when the law directs that the tax *shall* be collected from the consumer. The Kentucky statute merely permits the retailer to collect from the consumer. The fact that the burden may be passed on certainly does not convert the tax from one on the retailer to one on the consumer.

KRS 139.220 prohibits a retailer from advertising that the sales tax will be assumed by the retailer or that it will not be added to the selling price of the property sold, or that, if added, it will be refunded. This is another question which the California courts during the 30 years in which the tax has been in existence in that state have had occasion to examine. In Livingston Rock and Gravel Co. v. De Salvo, supra, that court said:

"* * * The purpose of this section is to place retailers on an equal basis since it is 'deemed unfair competition for the strong to absorb the tax and build up his trade at the expense of the weaker dealer who could not absorb it.'"

The 1934 Kentucky Sales Tax Act was construed by this Court in City of Covington v. State Tax Commission, 257 Ky. 84, 77 S.W.2d 386, to be a tax imposed on the consumer. The 1934 law required the retailer to collect the tax from the consumer while the statute under consideration now merely

permits collection. Other differences between the old and the new laws indicate an attempt by the legislature to establish a different concept in the new one. The import of the decision in the City of Covington case is that, since the economic burden of the tax fell upon the consumer, then he, in fact, was the taxpayer. It has been heretofore shown that the economic burden is not a criterion which will dictate the incidence of the tax. The present statute has been changed so materially as to render the opinion in the City of Covington case no longer controlling.

■ KRS 139.570 provides:

"The taxpayer shall deduct and withhold from the taxes otherwise due from him two percent thereof to reimburse himself for the cost of collecting and remitting the tax."

The taxes contemplated in that section are both sales taxes and use taxes. As we have noted, use taxes must be collected by the retailer from the user and they become a debt owed by the retailer to the state. (KRS 139.360) It is not unusual for the state to compensate an individual for tax services performed which benefit the state; e. g., cigarette wholesalers are permitted to buy tax stamps which they attach to cigarette packages at a reduced price. (KRS 138.-146(4)) It is commonly accepted practice to allow a discount to a taxpayer who pays his taxes early. Most significantly, gasoline dealers are permitted a deduction of a certain percentage of the number of gallons upon which tax is owed for various reasons, including handling and reporting the tax. (KRS 138.270(1) (b)) The gasoline dealer is the taxpayer. He pays tax on gasoline received. (See KRS 138.210, 138.-220) Consequently, we see no reason to conclude a taxpayer is not really a taxpayer just because he is given an allowance for handling the tax.

The question here involves the liability of the appellee for taxes upon utilities furnished to it. KRS 139.100(2) (b) provides:

"(2) 'Retail sale' or 'sale at retail' shall include but shall not be limited to the following: * * *

"(b) The furnishing of sewer services and intrastate telephonic and telegraphic communications and services; * * *."

And KRS 139.160 reads:

" 'Tangible personal property.' 'Tangible personal property' means personal property which may be seen, weighed, measured, felt or touched, or which is in any other manner perceptible to the senses and includes natural, artificial and mixed gas, electricity and water."

■ The circuit court adjudged that the appellee was exempt from the imposition of the Kentucky sales and use tax on its purchases or use of utilities, as well as to other tangible property, and that the application of the sales and use tax to the purchase of utilities by the appellee impairs the obligations of its contracts. We have shown that the sales tax is not a tax upon the appellee, and appellee is not exempt from bearing the burden of the tax which may be passed on to it by a utility company. The use tax is upon the appellee, and, consequently, the appellee is exempt therefrom. It follows that there is no impairment of a contractual obligation of appellee. Because the sales tax and use tax were a part of the same Act of the legislature and were jointly questioned in this action, we have determined the rights of the appellant and appellee as regards each tax.

The judgment is reversed in all respects, except that portion which declares the appellee exempt from payment of the use tax.

MONTGOMERY and MOREMEN, JJ., dissenting.